Rollins v. Gibson

---

---

RAYMOND E. ROLLINS v. PAUL H. GIBSON AND R. F. WALKER

No. 55

(Filed 13 June 1977)

1. **Sheriffs and Constables § 4— liability for false return**
   A false inference in a sheriff's return will render the return false within the meaning of G.S. 162-14 if the facts from which the inference is drawn are omitted from the return; however, where the facts underlying the inference or conclusion are truly stated in the return, there can be no liability for a *false* return, although the sheriff may still be exposed to a lesser liability for failing to execute the writ or for not making a proper and legal return.

2. **Sheriffs and Constables § 4— false return—inadvertence—damage to plaintiff**
   A sheriff is liable under G.S. 162-14 for a false return even though the returning officer may have inserted the falsehood in his return through inadvertence and even though plaintiff was not damaged thereby.

3. **Sheriffs and Constables § 4— false return—"due and diligent search"**
   The conclusion in a return that a defendant "after due and diligent search is not to be found," if untrue, may be the basis for a finding of a false return.

**4. Sheriffs and Constables § 4; Process § 4; Penalties— penalty for false return— criminal cases**

The penalty provided by G.S. 162-14 for a false return applies to process issued in criminal as well as civil cases. The decisions of. *Harrell v. Warren*, 100 N.C. 259 (1888) and *Martin v. Martin*, 50 N.C. 349 (1858) are overruled.

**5. Sheriffs and Constables § 4— false return—sufficiency of evidence**

Plaintiff's evidence was sufficient for the jury in an action against the sheriff to recover the $500.00 penalty for a false return where it tended to show that the return stated that the party to be served "after due and diligent search is not to be found," that the party to be served had an established and well-known (listed in the telephone directory) residence in the county, and that he was at home every day, except for working hours, while the process was in the sheriff's hands.

**6. Process § 4; Sheriffs and Constables § 4— false return—amendment**

It is within the discretion of the presiding judge to permit a sheriff to amend his return of process so as to make it speak the truth even after suit has been brought for the penalty imposed for a false return and though the amendment defeats plaintiff's right to recover such penalty.

Justice HUSKINS took no part in the consideration or decision of this case.

ON petition for discretionary review of the decision of the Court of Appeals reported in 31 N.C. App. 154, 228 S.E. 2d 506 (1976) (opinion by Parker, J., Brock, C.J., and Arnold, J., concurring), which reversed judgment of Alexander, D.J., for the plaintiff entered 18 November 1975 in District Court, GUILFORD County.

Plaintiff Rollins (then defendant) was convicted of a traffic offense in Davidson County District Court and appealed to the Superior Court. A subpoena requiring the plaintiff's appearance at the Davidson County Superior Court on 25 November 1975 was issued on 13 November 1974 and delivered to the Sheriff of Guilford County on 14 November 1974. This subpoena was subsequently returned to the Davidson County Superior Court with the following notation thereon:

"After due and diligent search Raymond Rollins not to be found in Guilford County. This 24 day of Nov., 1974. Time_____

PAUL H. GIBSON, SHERIFF
By s/ R. F. WALKER, D.S."

The plaintiff had been advised in Davidson County District Court that he would be notified of the date of his trial in superior court. He was never notified. When he did not appear on the scheduled date, a *capias instanter* was issued by the superior court. It was received by the Sheriff of Guilford County on 13 December 1974 and served on the plaintiff on 29 December 1974. Rollins was taken into custody until he posted an appearance bond.

Plaintiff brought this action pursuant to G.S. 162-14 against the Sheriff of Guilford County and his deputy, claiming the return on the subpoena was false and praying for the $500.00 relief provided for a false return in the statute.

At trial, plaintiff relied for his proof on his own testimony. He testified that he had lived at his residence in Guilford County since 1972, that he worked in Davie County, and that his name was listed in the telephone book. He further testified that between 14 November and 24 November 1974 he was at home in Guilford County each day except for the hours he was at work. Rollins left for work at 7:00 a.m. and returned home at 6:00 p.m., Monday through Friday.

The defendants' evidence principally tended to show the heavy workload of the sheriff's department with reference to service of process. As to the particular process, the sheriff had no personal knowledge of any attempts to serve the subpoena. Deputy Sheriff Walker recalled first locating the plaintiff's number in the telephone directory but was unable to contact him by phone. The subpoena was then carried in a deputy's car and rotated from car to car through three shifts a day. Deputy Walker testified that he recognized the plaintiff's house and must have carried the process two or three times to the plaintiff's house because he "wouldn't stamp it unless I had been there at least two or three times." He could not say that he left a card at the plaintiff's residence or attempted to contact the plaintiff's neighbors but indicated that these were usual procedures and that he followed procedure.

The trial court submitted the following two issues to the jury:

(1) "Did the defendant fail to make due and diligent search for the plaintiff, as alleged?"

(2) If so, was the return by the defendants false, as alleged?"

The jury answered both issues "yes" and the trial judge entered judgment on the verdict in the amount of $500.00 against defendant Paul H. Gibson, Sheriff of Guilford County, after having determined that G.S. 162-14 does not impose liability on deputy sheriffs.

As indicated, the Court of Appeals on appeal reversed and remanded with instructions to dismiss the action on the ground that G.S. 162-14 does not apply to "a return made to process issued in a criminal proceeding."

Other pertinent facts will be discussed in the opinion.

*Michael R. Greeson, Jr., for plaintiff appellant.*

*William L. Daisy, Assistant County Attorney, for defendant appellees.*

COPELAND, Justice.

The statute under which the plaintiff sues reads as follows:

"Every sheriff, by himself or his lawful deputies, shall execute and make due return of all writs and other process to him legally issued and directed, within his county or upon any river, bay or creek adjoining thereto, or in any other place where he may lawfully execute the same. He shall be subject to the penalty of forfeiting one hundred dollars ($100.00) for each neglect, where such process shall be delivered to him 20 days before the sitting of the court to which the same is returnable, to be paid to the party aggrieved by order of court, upon motion and proof of such delivery, unless the sheriff can show sufficient cause to the court at the next succeeding session after the order.

"For every false return, the sheriff shall forfeit and pay five hundred dollars ($500.00), one moiety thereof to the party aggrieved and the other to him that will sue for the same, and moreover be further liable to the action of the party aggrieved, for damages." G.S. 162-14.

This statute, enacted in 1777, has remained largely unchanged over the years (except that the $100.00 and $500.00 penalties were both originally 50 pounds). *Produce Co. v. Stan-*

*ley,* 267 N.C. 608, 148 S.E. 2d 689 (1966). The statute authorizes the following actions and remedies:

"1. An amercement *nisi* for $100, on 'motion and proof' by the party aggrieved, for failure to 'execute and make due return.' 2. A *qui tam* [civil] action for penalty of $500 for a 'false return,' one moiety to the party aggrieved, and the other to any one who will sue for the same. 3. An action for damages by the party aggrieved." *Manufacturing Co. v. Buxton,* 105 N.C. 74, 76, 11 S.E. 264, 265 (1890).

During this century, few cases involving the amercement of a sheriff have reached this Court. Nevertheless, the need for amercement in proper cases is as great today as it was during the reign of King Edward I of England. *Produce Co. v. Stanley, supra;* Wyatt, *Amercement of Sheriffs,* 10 Wake Forest L. Rev. 217 (1974). A 1285 statute, after reciting the twin problems of sheriffs failing to return writs or returning them falsely, provided:

"That such as do fear the Malice of Sheriffs, shall deliver their Writs original and judicial in open County, . . . and may take of the Sheriff or Undersheriff, being present, a Bill, wherein the Names of the Demandants and Tenants mentioned in the Writ shall be contained; and at the Request of him that delivered the Writ, the Seal of the Sheriff or Undersheriff shall be put to the Bill for a testimony, and Mention shall be made of the Day of Deliverance of the Writ. . . . And if the Sheriff will not return Writs delivered unto him, and Complaint thereof be made to the Justices, . . . an Inquest shall be returned. And if it be found by the Inquest, that the Writ was delivered to him, Damages shall be awarded to the Plaintiff or Demandant. . . ."

The same statute also provided:

"And the King hath commanded, that Sheriffs shall be punished by the Justices once or twice (if Need be) for such false Returns; and if they offend the third Time, none shall have to do therewith but the King." 13 Edw. I, Stat. 1, c. 39 (1285).

The question presented by this appeal asks whether a sheriff can be liable under G.S. 162-14 for a return of criminal process which states only that a defendant "after due and dili-

gent search is not to be found," when a jury finds, upon sufficient competent evidence, that the return is false. We hold that a sheriff can incur liability in this situation.

We first consider when, if ever, a return of "after due and diligent search not to be found" can be considered a false return within the meaning of G.S. 162-14. What constitutes a false return under G.S. 162-14 is well established. For the sheriff to incur the heavy $500.00 penalty, the return "must be false in point of fact, and not false merely as importing, from facts truly stated, a wrong legal conclusion." *Lemit v. Mooring*, 30 N.C. 312, 314 (1848) (Ruffin, C.J.) "To subject one to the heavy penalty of the statute, the falseness must be stated as a fact and not merely by way of inference from facts." *Hassell v. Latham*, 52 N.C. 465, 466 (1860). A comparison of three cases serves to illustrate what our Court has intended by this rule.

In *Lemit v. Freeman*, 29 N.C. 317 (1847) (Ruffin, C.J.), a writ was delivered to a sheriff seventeen days before the term to which it was returnable. The return was made in the sheriff's name by his deputy. The return did not indicate the day upon which the writ was received by the sheriff. In an action against the sheriff for $500.00 for making a false return of "Too late to hand to execute in time," this Court held the sheriff liable. In two later cases with similar fact situations, the Court reached a contrary result because the return additionally truthfully gave the date upon which the writ was received.

In *Lemit v. Mooring, supra*, the return stated:

"This writ came to hand on 22 February, 1847, during the term of Martin Superior Court of Law, and from that day until Friday, inclusive, of that court, I and my deputies were engaged, so that I could not serve said writ on the defendant. . . ." *Mooring, supra* at 312

In finding no liability for a false return, the Court in *Mooring* reasoned that "[t]he act was designed to punish sheriffs for putting on process deceptive returns, such as mislead the parties in point of fact and baffle them in the execution of their process" and concluded that no part of the return was untrue as to a matter of fact and that the statement " 'so that I could not serve this writ on the defendant' — is barely a conclusion or

inference from the preceding facts, and purports only to be so, and could not deceive the plaintiff as to the acts of the sheriff or with respect to his recourse on him." *Mooring, supra* at 314.

In *Hassell v. Latham, supra*, the sheriff's return read:

"Received 8 March, 1859; too late to hand."

Five days intervened between the receipt and return days. The Court, finding for the sheriff, said:

"The day of its [the writ's] reception is endorsed; the day of its return is known; the 'Too late to hand,' in this case, is merely a *false inference*, if false at all." (Emphasis in original.) *Hassell, supra* at 467.

[1] It appears from these cases that a false inference in a return will render the return false within the meaning of G.S. 162-14 if the facts from which the inference is drawn are omitted from the return. But where the facts underlying the inference or conclusion are truly stated in the return there can be no liability for a *false* return although the sheriff may still be exposed to a lesser liability for failing to execute the writ or for not making a proper and legal return. *Lemit v. Mooring, supra; accord, Tomlinson v. Long*, 53 N.C. 469 (1862).

Besides the possibility of misleading the parties, another reason exists for treating false inferences in a return differently, depending upon the presence or absence in the return of the facts giving rise to the inference. In *Albright v. Tapscott*, 53 N.C. 473 (1862), we noted "[t]he great importance of securing for these returns absolute verity, being *quasi* records, and the strong temptations which exist [for officers] to cover over omissions by the technical form of a return. . . ." *Albright, supra* at 474.

[2] It is this latter consideration, veracity of *quasi* judicial records, which led us to adopt the stringent rule that "every untrue return, in fact, is a false return within the purview of the statute." *Albright v. Tapscott, supra* at 474. "It is of great importance that judicial proceedings and all executions and return of process should be absolutely truthful." *Peebles v. Newsom*, 74 N.C. 473, 475 (1876).

This stringent rule applies even though the returning officer may be mistaken and insert the falsehood in his return

through inadvertence. *Finley v. Hayes,* 81 N.C. 368 (1879); *Albright v. Tapscott, supra; Peebles v. Newsom, supra.*

> "It is immaterial that the officer had no selfish purpose to subserve, or was unmoved by any criminal intent. If . . . his return is false in its facts or any of the facts touching the things done under it, he is as well exposed to the penalty of $500 denounced against a false return, as if the false facts were wilfully and corruptly inserted." *Finley, supra* at 370; *accord, Peebles, supra.*

Under our case law and the statute, it is also immaterial in a civil action for the $500.00 penalty whether any damage was done to the plaintiff. G.S. 162-14 allows "him that will sue for the same" to institute the action for a false return. It is obvious from the statute that the $500.00 penalty is not intended by the legislature to be a substitute for damages to an injured party because the same statute allows "the party aggrieved" to bring a separate action for damages. *Manufacturing Co. v. Buxton, supra;* G.S. 162-14. In *Finley v. Hayes, supra,* our Court upheld a $500.00 judgment for the plaintiff even though the untrue facts of the sheriff's return "were without fraud and benefit to him, and *without any damage to the plaintiff."* (Emphasis supplied.) *Finley, supra* at 372; *cf. Swain v. Phelps,* 125 N.C. 43, 34 S.E. 110 (1899).

Sheriffs have been held liable for a false return when a subpoena was served on a person other than the person named, *Albright v. Tapscott, supra* (judgment arrested because of a pleading irregularity); when the date of sale of land and the application of the proceeds were incorrectly stated in a return on an execution, *Finley v. Hayes, supra;* when the date money was collected under an execution was incorrectly stated in the return, *Peebles v. Newsom, supra.*

[3] It may still be questioned whether the conclusion found in a return of "due and diligent search," without more, if untrue, may be the basis for a finding of a false return. We believe that such a false conclusion or inference can render a return false and that *Tomlinson v. Long, supra,* is controlling on this point.

G.S. 162-14 commands the sheriff, by himself or his lawful deputies, to "execute and make due return" of all writs and other process issued and directed to him. That the sheriff must

be diligent in both the execution and return of process or suffer the $100.00 penalty provided in G.S. 162-14 is clear. *Produce Co. v. Stanley, supra; Swain v. Phelps, supra; Bell v. Wycoff,* 131 N.C. 245, 42 S.E. 608 (1902).

In *Tomlinson v. Long, supra,* the plaintiff had issued a subpoena, in due form, directed to the sheriff, commanding him to summon a certain witness for the plaintiff to appear in a pending civil action. The sheriff received the subpoena around 15 December 1859 and returned it 10 January 1860, endorsed "Not to be found in my county." The plaintiff subsequently sued the sheriff for the $500.00 penalty for a false return.

At trial, the plaintiff showed that the party to be served "had an established and well known residence in the county, and was absent from the county for five days only, immediately preceding Christmas day." *Tomlinson v. Long, supra* at 471. The defendant's evidence showed that a deputy went to the witness's residence at least once but did not find him at home; that it was a long distance from the sheriff's office to the witness's residence, and that a person who knew the witness had told the sheriff, while the witness was out of the county, that the witness would not return for two or three weeks. The trial court nonsuited the plaintiff's action. On appeal, this Court felt that, in its "present state," the sheriff's return was false and ordered a new trial.

The Court noted that even if it put a construction on the words of the return most favorable to the defendant and interpreted the return to mean that the witness had not been found after due search, the return would still be false, because it was not true to say that a proper search had been made. We are at a loss to distinguish *Tomlinson* from the present case on any ground other than the fact that it involved a false return of process in a *civil* case, which leads us to the next consideration.

The Court of Appeals correctly determined that our prior cases hold G.S. 162-14 inapplicable to a return of process issued in a *criminal* proceeding. *Harrell v. Warren,* 100 N.C. 259, 6 S.E. 777 (1888); *Martin v. Martin,* 50 N.C. 349 (1858). Formerly, a rigid dichotomy existed in the remedies available for defective returns of process in civil and criminal actions. Our cases construed G.S. 162-14 to be the exclusive remedy for a defective return of civil process and G.S. 14-242 to be the criminal process equivalent remedy. *See Manufacturing Co. v. Bux-*

*ton, supra; Harrell v. Warren, supra.* G.S. 14-242, a part of our jurisprudence since 1818, reads as follows:

"If any sheriff, constable or other officer, whether State or municipal, or any person who shall presume to act as any such officer, not being by law authorized so to do, refuse or neglect to return any precept, notice or process, to him tendered or delivered, which it is his duty to execute, or make a false return thereon, he shall forfeit and pay to anyone who will sue for the same one hundred dollars, and shall moreover be guilty of a misdemeanor."

In *State v. Berry,* 169 N.C. 371, 85 S.E. 387 (1915), our Court took the first step in eroding this dichotomy when it held G.S. 14-242 applicable to returns of both criminal and civil process based upon the "plain language" of that statute. We are asked in the present case to reconsider the correctness and wisdom of our holdings confining G.S. 162-14 to civil process only.

[4] In *Martin v. Martin, supra,* it was conceded that the language of G.S. 162-14 describing the process is "very general; 'all writs and other process to him legally issued and directed.' " But the Court felt that "[t]hese general words are restrained by other parts of the section, i.e. 'one moiety to the party aggrieved.' " *Martin, supra* at 351. Focusing on the words "party aggrieved" (formerly "party grieved") in the statute, the Court decided that the legislature could not have intended the statute to apply to criminal process. We now reject this reasoning because it completely overlooks the fact that the action for a false return can be brought by anyone who will sue, whether or not that person is the party aggrieved. We believe the statute is clear on its face and means what it says—"all writs and other process." We hold that G.S. 162-14 applies to process issued in criminal, as well as civil, proceedings. *Harrell v. Warren, supra,* and *Martin v. Martin, supra,* are hereby overruled. Proper performance of official duties is as important in criminal matters as it is in civil.

[5] The defendant also questions on this appeal the sufficiency of the plaintiff's evidence to go to the jury. In light of *Tomlinson v. Long, supra,* we must conclude that plaintiff's evidence was sufficient to survive defendant's motion for a directed verdict. The plaintiff proved, as did the plaintiff in *Tomlinson,* that the party to be served had an established and well-known

(listed in the telephone directory) residence in the county and that he was at home, except for working hours, every day from 14 to 24 November 1974. It is not necessary under *Tomlinson v. Long, supra,* for the plaintiff to show the sheriff's efforts, or lack of efforts, to serve the process.

The heavy workload of the sheriff's department, while it renders the sheriff's lack of diligence more understandable, is of little legal significance. In *Tomlinson v. Long, supra,* the defendant sheriff introduced evidence of the distance (25 miles on horseback) between his office and the witness's residence as a part of his defense. In that case we said: "We attach but little importance to the distance between the sheriff and witness's residence. The sheriff must be able, either by himself or deputies, to discharge his duty in all parts of the county with proper official dispatch." *Tomlinson, supra* at 471.

We have also examined defendant's contention that the trial court committed prejudicial error in instructing the jury that Deputy Sheriff Walker was an interested witness and find no merit in it.

Our holding today poses no hardship on sheriffs for two reasons. As we pointed out in *Tomlinson v. Long:*

"If the sheriff desires to avoid the heavy penalty of the statute for a false return, he should in all cases of doubt return the facts, and not merely his [or his deputy's] conclusions. By doing so, if it should appear that he has erred, he will have subjected himself to the penalty of $100 for not duly executing and returning, but not to the higher penalty for a false return. This last penalty is imposed only for returns false in fact, and not for those which are false only by way of inference (the facts being truly stated)." *Tomlinson, supra* at 471-72.

[6] After he has made a false return, a sheriff still has a means of protecting himself against liability for a false return. In *Peebles v. Newsom,* we said:

"Any hardship resulting from this rule may be relieved, and will be relieved by our law of amendments. If a return is false by mistake or inadvertence, the Court will allow the Sheriff to amend his return so as to speak the truth. If the return is false of purpose, then no amendment will

be allowed, and the penalty will be recovered." *Peebles, supra* at 475.

A sheriff may move to amend his return of process so as to make it speak the truth even *after* suit has been brought for the penalty imposed for a false return and though the amendment defeats the plaintiff's right to recover such penalty. *Stealman v. Greenwood,* 113 N.C. 355, 18 S.E. 503 (1893); *accord, Swain v. Burden,* 124 N.C. 16, 32 S.E. 319 (1899). In such a case, the sheriff does not as a matter of law have the right to amend his return in order to correct his error, rather, it is within the discretion of the presiding judge to allow such amendments in meritorious cases. *Campbell v. Smith,* 115 N.C. 498, 20 S.E. 723 (1894).

The decision of the Court of Appeals is

Reversed.

Justice HUSKINS took no part in the consideration or decision of this case.